# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| Michael Fink, | Court File No. 1:20-CV-222-DLH-CRH |
| Plaintiff, | |
| vs. | **BNSF RAILWAY COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

Plaintiff Michael Fink's ("Plaintiff" or "Fink") opposition to BNSF Railway Company's ("BNSF") motion for summary judgment attempts to remedy his failure to satisfy the elements of his FRSA claim by using conjecture and speculation to supply a retaliatory motive as to the reason for his termination. Plaintiff also raises inflammatory arguments regarding derailment incidents not at issue in this case to attempt to distract the Court from his inability to prove that any protected activity he engaged in was a contributing factor in his termination under Eighth Circuit precedent. Likewise, Plaintiff attempts to blur the distinct lines between his managers – Jacob Demarais and Sean Schneider – and Chad Sundem, the ultimate decisionmaker in his termination, and seeks to assign an ulterior, retaliatory motive to Sundem's decision to terminate him, based on a purported conspiracy to terminate him by Schneider and Demarais. Neither of Plaintiff's supervisors played a part in Sundem's decision to terminate him, which

was made independently based on the undisputed video evidence and a full investigation demonstrating Plaintiff lied about damaging the subject switch. Lastly, Plaintiff misinterprets the comparator data in an effort to persuade the Court that he was disciplined more severely than similarly situated employees. To the contrary, the comparator data shows that nearly all employees investigated for "Rule 1.6-dishonesty" in the Twin Cities Division have been terminated, as Plaintiff was. In other words, Plaintiff cannot establish he was treated differently than any other similarly situated employee.

Because Plaintiff cannot establish a genuine dispute of material fact in opposing BNSF's motion, and for the reasons stated in its moving memorandum, BNSF respectfully requests the Court grant its motion for summary judgment and dismiss Plaintiff's claims as a matter of law.

## ARGUMENT

**I.  THE DECISIONMAKER IS SEPARATE AND DISTINCT FROM FINK'S LOCAL MANAGERS AND FOLLOWED PROPER PROCEDURE TO TERMINATE FINK.**

Plaintiff attempts to blur the lines between his local managers/supervisors, Demarais and Schneider, and the ultimate decision maker, Chad Sundem, the general manager for BNSF's Twin Cities Division, which covers portions of five midwestern states. While BNSF does not in any way concede that either Demarais or Schneider had it out for Plaintiff, as Plaintiff would like the Court to believe, it is undisputed that Sundem did not either. Rather, the evidence demonstrates that Sundem made his decision based on the investigation into

Fink's dishonesty, which "[c]learly showed . . . through witness testimony and the pictures that they. . . absolutely ran through the switch." (*See* Chad Sundem Deposition Transcript, ECF No. 41-13, at 54:9-19.)[1] Plaintiff cannot get around the simple fact that he was dishonest about damaging railroad property and was terminated for his dishonesty in accordance with GCOR 1.6, the applicable collective bargaining investigatory process, and BNSF's PEPA policy. At the very least, while Plaintiff improperly attempts to relitigate the issue of whether he was dishonest, he fails to create an issue of fact regarding BNSF's good faith belief that he was dishonest. See *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017) ("The critical inquiry in the pretext analysis is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge."); *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 792 (8th Cir. 2014) (holding the employee was "not entitled to FRSA anti-retaliation relief even if BNSF inaccurately concluded that he [violated the rules]").

Plaintiff wants this Court to believe that the investigatory and disciplinary process laid out in BNSF policies and the applicable collective bargaining agreement are a sham, and that Sundem merely followed along with Fink's

---

[1] Importantly, this conclusion is not one only BNSF's management employees hold. Plaintiff's own union representative, Cordell Booke, testified that based on his review of the video and pictures involved in this case he believed that Fink's crew actually ran into the switch with the leading wheel of the locomotive. (See, Cordell Booke Deposition Transcript, ECF No. 41-8, at 119:6-10).

3

manager's recommendations on discipline. (*See generally* Pl. Br.) But Plaintiff does not dispute that BNSF followed the applicable, prescribed BNSF procedure, and Plaintiff has presented no evidence that BNSF's procedure is a sham. Following that procedure, Sundem made the decision to terminate Plaintiff based on his review of the investigation transcript. (ECF No. 41-13, at 36:4-40:9). Sundem did not have any personal knowledge of reports Fink made to the FRA prior to the incident, and when asked if he was aware of what Demarais knew Sundem testified "No. I do not know what Jacob Demarais knew." (*Id*. at 47:24-48:5.) Sundem properly referred Fink's safety concerns to BNSF's law department, but Fink's safety allegations did not play a part in Sundem's disciplinary decision. (*Id*. at 52:18-56:15.) Sundem was not aware of any additional investigation into Plaintiff's retaliation claims, and aside from an email chain referring Plaintiff's concerns to the legal department, Sundem did not have any other knowledge of Plaintiff's safety concerns, their veracity, their timing, or any other information regarding his protected activity. (*Id*. at 54:20-56:15.) In other words, Sundem's decision was properly insulated from any evaluation of Plaintiff's protected activity and was not influenced by anything other than the incident involving the damaged switch and Plaintiff's dishonesty.

Plaintiff attempts to assign a retaliatory motive to Sundem's actions, through Demarais and Schneider. Yet, it is exceedingly clear that Sundem's actions with respect to Fink were independent of any recommendations made by either Schneider or Demarais. (*See generally id.*) It is undisputed that neither

4

Schneider nor Demarais made the disciplinary decision relating to Plaintiff. See *Gunderson*, 850 F.3d at 969 (affirming summary judgment in favor of BNSF based, in part, on the fact the general manager discharged the employee, not "the lower-level supervisors [the employee] accuses of safety-related bias.").

Moreover, even if they did have retaliatory motive, which BNSF in no way concedes, Sundem's decision was independent of any recommendation Demarais or Schneider had regarding Plaintiff. (*Id.*) Plaintiff speculates regarding a connection between Schneider and Demarais' feelings toward him and Sundem's ultimate decision to terminate him, without reference to any evidence establishing such a connection. Similarly, Plaintiff hypothesizes BNSF "put productivity ahead of safety," which are the same types of vague allegations the Eighth Circuit has dismissed where employees such as Fink fail to "identify evidence that any incentive motivated the decision-makers who dismissed him." *Neylon v. BNSF Ry. Co.*, 968 F.3d 724, 730 (8th Cir. 2020). Such conjecture and speculation is not a proper basis on which to deny a motion for summary judgment. *Elmore v. Kelly*, 578 F. App'x 623, 624 (8th Cir. 2014) (stating that beliefs, conjecture, speculation, and conclusory allegations cannot defeat summary judgment). Because Plaintiff has failed to set forth any admissible evidence to dispute that Sundem made his decision independently regarding the incident and did not take into account any protected activity Plaintiff may have engaged in, BNSF requests the Court grant its motion for summary judgment.

## II. BNSF DID NOT RETALIATE AGAINST PLAINTIFF AND WOULD HAVE TERMINATED HIM IN THE ABSENCE OF HIS PROTECTED ACTIVITY.

Plaintiff has not demonstrated with admissible evidence that Sundem knew of any protected activity he engaged in, or that any protected conduct he engaged in was a contributing factor in his termination. *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014). Plaintiff has also failed to establish with any evidence whatsoever that there was intentional retaliation prompted by the employee engaging in protected activity, required by the Eighth Circuit in cases such as this. *Id*. at 791. To the contrary, though Sundem saw Plaintiff's report of protected activity in the investigatory transcript, and while he referred Plaintiff's case to BNSF's legal department, he did not consider those protected activities when disciplining Fink for his dishonesty regarding damaging the subject switch. (*See generally* ECF No. 41-13.) Plaintiff's conjectural statements ask this Court to imply a retaliatory motive where there clearly is not one. The Court should reject Plaintiff's attempts to muddle the record and imply intentional retaliation where there is simply no evidence of it.

Plaintiff points to his report of safety concerns the night of the incident in an effort to suggest that there was temporal proximity between his protected activity and his termination. To the contrary, however, Plaintiff's timing of reporting safety concerns is suspect at best, and at worst demonstrates that he reported a safety concern *after* his dishonesty in an attempt to protect himself from any adverse employment action that may be taken by BNSF. In other words, Plaintiff

attempted to immunize himself by reporting a safety concern to BNSF's exempt employees at the same time he understood he was to be disciplined, to establish temporal proximity. But it is axiomatic that "employees cannot immunize themselves against wrongdoing by disclosing it in a protected-activity report." *Dakota Minnesota & E. R.R. Corp. v. U.S. Dept. of Lab. Admin. Rev. Bd.*, 948 F.3d 940, 946 (8th Cir. 2020). The timing of Fink's safety concern, reported to BNSF's exempt employees <u>after</u> his dishonesty but <u>before</u> discipline was assessed, demonstrates that he knew and understood that he was going to be disciplined for his dishonesty, and attempted to immunize himself from any discipline by conveniently reporting a safety concern at the same time. Such an attempt to immunize oneself from disciplinary action should not be condoned by this Court.

Plaintiff also relies on extra-jurisdictional, non-reported caselaw that is factually distinguishable from the case at bar. In particular, Plaintiff cites a trial court order in *Fresquez v. BNSF R.R. Co.*, No. 17-CV-00844-WYD-SKC, 2018 WL 6249686 (D. Colo. Oct. 2., 2018). Importantly, *Fresquez* is factually distinct because in that case, the Court found that on the date disciplinary procedures were initiated against an employee, his supervisor "threatened to fire Plaintiff and told him he did not 'lose'". *Id.* at *7. There is no such evidence here; none of Plaintiff's supervisors, including Demarais and Schneider, much less Sundem, threatened to fire him or reacted negatively to Plaintiff's reported safety concern. Rather than relying on the evidence in this case, Plaintiff would prefer this Court infer retaliatory motive based on pure conjecture. BNSF urges this Court to reject Plaintiff's invitation to decide this motion based on speculation, as doing so would turn the evidentiary

7

standard on its head. Because Plaintiff has failed to establish his FRSA claim under Eighth Circuit precedent, BNSF requests the Court grant its motion for summary judgment.

### III. PLAINTIFF MISINTERPRETS COMPARATOR DATA, WHICH SUPPORTS HE WAS NOT TREATED DISPARATELY.

Plaintiff's interpretation of the comparator data – namely that in ninety percent of Rule 1.6 violation cases the employee is not terminated – is overbroad and misleading. (*See* Pl. Br. at 27-29.) Rule 1.6 can cover a broad spectrum of rule infractions, only one of which is dishonesty, meaning not all Rule 1.6 infractions are comparable to Plaintiff's case. More specifically, Rule 1.6 may be cited in connection with a wide variety of rule infractions, including reporting for duty/absence, complying with instructions, respect for railroad property, avoiding delays, maintaining a safe course, altercations, going between cars, electronic devices, and games, reading or other media, among others. (*See* Comparator Spreadsheet of Rule 1.6 Violations in Twin Cities Division for Three Years Prior to Incident, attached to the Supplemental Declaration of R. John Wells ("Wells Decl.") as Ex. 23.) In addition, not all Rule 1.6 violations are stand-alone dismissible offenses. Dishonesty is a stand-alone dismissible offense, demonstrating that BNSF takes dishonesty seriously and has little tolerance for its employees failing to be truthful.

Where Rule 1.6 was cited, only nine entries overtly report dishonesty, and where discipline was assessed, the employee was terminated in five out of six, or 83%, of the cases:

| Line | Employee | Resolution |
|------|----------|------------|
| 48 | Renner | Dismissal |
| 77 | Danielson | Dismissal |
| 78 | Heller | Employee exonerated |
| 79 | Heller | Employee exonerated |
| 83 | Carlson | Dismissal |
| 84 | Fink | Dismissal |
| 85 | Christianson | Dismissal |
| 87 | Carroll | Level S, 30-day suspension |
| 88 | Cook | Employee resigned |

(*Id.*) The comparator data demonstrates that Fink was treated the same as other employees who were charged with Rule 1.6 dishonesty and disciplined. The only exception was Carroll, who was also involved in the incident in this case. But, Carroll was not a seasoned railroader with nearly eight years of experience, as Fink was. Rather, he was a trainee employee following the lead of more experienced railroaders. Similarly, Carroll (unlike Fink) showed contrition for by coming clean to Demarais, confessing that the crew had been dishonest about damaging the switch. (ECF No. 41-4, at 75:15 - 78:16.) Nevertheless, Carroll was still disciplined. His lesser discipline does not demonstrate that Fink was treated disparately, it merely shows that BNSF gave Carroll a second chance after following bad advice and guidance from more superior, seasoned employees. Plaintiff's misleading summary of the comparator data is unpersuasive and does not create a genuine issue of material fact. Rather, the comparator evidence

shows that BNSF disciplined Plaintiff in conformance with the level and severity of discipline assessed to other dishonest employees.

## **CONCLUSION**

BNSF respectfully requests this Court grant its Motion for Summary Judgment in the entirety.

Dated: June 1, 2023    HAWS-KM, P.A.

*/s/ R. John Wells*
Daniel A. Haws, MN #193501
(Admitted to ND Federal Court)
R. John Wells, ND #07726
Attorneys for Defendant
BNSF Railway Company
30 East Seventh Street, Suite 3200
St. Paul, MN 55101-4919
Tel. (651) 227-9411
dhaws@hkmlawgroup.com
jwells@hkmlawgroup.com

**Ohnstad Twichell, P.C.**

 /s/ Andrew D. Cook
Andrew D. Cook, ND ID#06278
444 Sheyenne St., Suite 102
West Fargo, ND 58078-0458
Tel.   (701) 282-3249
Fax.   (701) 282-0825
Email: acook@ohnstadlaw.com

4880-1020-4263, v. 1